# United States District C[ourt]

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Dec. 16, 2004 |
|---|---|---|
| CASE NUMBER | 01 C 4276 | |
| CASE TITLE | Donnell Gary v. [I]stys | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., p[laintiff], [defendant], [(b) state briefly the nature] of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due ___.
(3) ☐ Answer brief to motion due ___. Reply to answer brief due ___.
(4) ☐ 
(5) ☒ Hearing ___
(6) ☐ Status hearing set for 1/6/05, at 9:00 a.m.
(7) ☐ Pretrial conference[held/continued to] ___
(8) ☐ Trial[set for/re-set for] on ___ [set for/re-set for] on ___ set for ___ at ___.
(9) ☐ [Bench/Jury trial] [Hearing] held/continued to ___ at ___.
    This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ☒ [Other docket entry] Memorandum opinion and order entered. Accordingly, defendant's motion for summary judgment is denied.

(11) ☒ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | |
|---|---|---|
| X | No notices required. | |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

| GS | courtroom deputy's initials | Date/time received in central Clerk's Office |

number of notices
DEC 17 2004 date docketed
docketing deputy [initials]
date mailed notice
mailing deputy initials

Document Number: 46

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DONELL GARY, )
 )
      Plaintiff, )
 ) No.   01 C 4276
v. )
 ) Judge Robert W. Gettleman
DR. LINAS SMULKSTYS, )
 )
      Defendant. )

**DOCKETED**
**DEC 1 7 2004**

## MEMORANDUM OPINION AND ORDER

Plaintiff Donell Gary ("plaintiff"), a prisoner formerly incarcerated at the Cook County Department of Corrections (CCDOC), filed a three-count complaint pursuant to 42 U.S.C. § 1983 alleging violations of his rights under the Eighth Amendment and the Fourteenth Amendment, and negligent medical treatment. Defendant, Dr. Linas Smulkstys ("Dr. Smulkstys") has moved for summary judgment pursuant to Fed. R. Civ. P. 56 on Count II of the complaint, which alleges that Dr. Smulkstys was deliberately indifferent to plaintiff's serious medical need for eye surgery. Count II is the only count against Dr. Smulkstys, and the only remaining count.[1] For the reasons discussed herein, the court denies Dr. Smulkstys's motion for summary judgment.

## FACTS[2]

On December 9, 2000, during his incarceration at CCDOC, plaintiff was attacked by another inmate and sustained an injury to his left eye. Following the attack plaintiff was sent to Cermak Health Services ("Cermak"), a medical facility operating in

---

[1] On July 1, 2004, plaintiff represented in open court that he would pursue his claims against Dr. Smulkstys only. The court granted plaintiff leave to file a second amendment complaint, but plaintiff did not do so.

[2] Unless otherwise noted, the following facts, taken from the parties' L. R. 56.1 statements, are not in dispute.

conjunction with the CCDOC, for treatment. Doctors performed a CAT scan on plaintiff and informed plaintiff that his eye was not fractured. Plaintiff was given an ice pack and pain medication. Approximately six days later, after complaining that he was still experiencing problems with his eye, plaintiff was sent back to Cermak for additional treatment. Plaintiff was seen by a different doctor who performed a second CAT scan. On or about December 27, 2000, plaintiff was informed that the test results indicated that plaintiff required corrective surgery.

On December 28, 2000, Dr. Smulkstys assumed responsibility for plaintiff's care at Cermak. Plaintiff remained under Dr. Smuklstys's care until plaintiff was transferred to the Illinois Department of Corrections (IDOC) in February 2002. On December 28, 2000, Dr. Smulkstys confirmed that plaintiff had suffered a "blowout fracture" to his left orbit, and that the injury required surgery. According to Dr. Smulkstys, as time passed, he determined that plaintiff did not require emergency surgery because plaintiff was not in danger of any further damage to his eye. Because Dr. Smulkstys is not a surgeon and could not perform the operation himself, he referred plaintiff to a plastic surgery group at Fantus Clinic, a clinic associated with Cook County Hospital. The surgery group at Fantus Clinic was responsible for scheduling plaintiff's surgery date and performing the surgery.

Fantus Clinic initially scheduled plaintiff for eye surgery in June 2001, which was cancelled, allegedly due to concerns about plaintiff's high blood pressure. Thereafter, surgery on plaintiff's eye was cancelled and rescheduled several times due to plaintiff's high blood pressure and scheduling conflicts. From December 2000 through February 2002, while plaintiff remained incarcerated at CCDOC, Dr. Smulkstys saw plaintiff more

than a dozen times to check on the status of his surgery date and to respond to plaintiff's requests for medical attention. For example, Dr. Smulkstys testified at his deposition that while plaintiff was awaiting surgery, he addressed plaintiff's complaints of headaches, scalp itching, a fungal infection, and herpes, and his request for approval for an in-jail substance abuse program. In addition, in response to Fantus Clinic's cancellations of the surgery, Dr. Smulkstys treated plaintiff's high blood pressure, ordered a new CAT scan, ran additional medical tests to clear plaintiff for surgery and to avoid any additional delays, and repeatedly referred plaintiff back to Fantus Clinic to reschedule. A new CAT scan performed on April 3, 2001, indicated that plaintiff's fracture had healed, although not ideally. Dr. Smulkstys continued to refer plaintiff for surgery. On October 17, 2001, plaintiff was found hoarding large amounts of the blood pressure medicine prescribed by Dr. Smulkstys, in part to ensure plaintiff's fitness to undergo surgery. Thereafter, Dr. Smulkstys ordered that plaintiff be given dose-by-dose medication with mouth checks.

Throughout this period, Dr. Smulkstys continued to refer plaintiff to Fantus Clinic to obtain a surgery date. Dr. Smulkstys testified that, in his experience, continuing to make referrals rather than personally speaking with the surgeons at Fantus Clinic was the most practical and effective way to ensure that the surgery was performed. It is uncontested that Dr. Smulkstys did not have the authority to order surgery for plaintiff, or to refer plaintiff to another clinic for surgery if the treatment was offered through Fantus Clinic.

Plaintiff was ultimately transferred to IDOC in February 2002 – and out of Dr. Smulkstys's care – without receiving surgery. By this time, it is uncontested that

3

plaintiff's eye injury had healed, although not ideally. Plaintiff alleges that he continues to experience discomfort and itching in his eye, dizziness, and double vision.

## DISCUSSION

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits reveal no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56 (c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts indicating the existence of a genuine issue of fact for trial. See Fed. R. Civ. P. 56 (e); Becker v. Tenenbaum-Hill Associates, Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1241 (7th Cir. 1992). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Plaintiff alleges that Dr. Smulkstys violated his constitutional rights when Dr. Smulkstys failed to secure surgery on plaintiff's fractured eye orbit. In Estelle v. Gamble, 429 U.S. 97, 104 (1976), the Supreme Court held that the Eighth Amendment proscription against cruel and unusual punishment applies to the states through the Due Process Clause of the Fourteenth Amendment and imposes upon the State a duty to provide adequate medical care to prisoners. Id. at 101-03. To prevail on a claim of inadequate medical care a plaintiff must show that a prison official demonstrated deliberate indifference to a serious medical need. Id. at 104. To meet the deliberate indifference standard, a plaintiff must demonstrate both an objective risk of danger and the defendant's actual knowledge of that risk. Mayoral v. Sheahan, 245 F.3d 934, 938 (7th Cir. 2001).

First, a plaintiff must show a medical condition that is objectively sufficiently serious. Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997). The Seventh Circuit has defined a "serious" medical condition as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. at 1373. In the instant case, Dr. Smulkstys does not contest the seriousness of plaintiff's eye injury. The court's decision, therefore, turns on whether plaintiff has created a triable issue of fact whether Dr. Smulkstys was deliberately indifferent to plaintiff's serious medical need.

Second, to satisfy the subjective element of a deliberate indifference claim a plaintiff must present evidence that a defendant acted, or failed to act, with a "sufficiently culpable state of mind." Id. at 1369. A defendant is deliberately indifferent to a prisoner's medical need only if he "knows of and disregards an excessive risk to inmate

5

health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). The prison official "must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. At a minimum, a plaintiff must show that the defendant-official knew of an imminent danger and "refused – consciously refused, knowingly refused – to do anything about it." Campbell v. Greer, 831 F.2d 700, 702 (7th Cir. 1987). Conduct amounting to medical negligence, however, does not rise to the level of deliberate indifference actionable under the Eighth Amendment. Sellers v. Henman, 41 F.3d 1100, 1102 (7th Cir. 1994). Thus, a series of purely negligent acts cannot be equated to an act of deliberate indifference. Id. at 1102-03. Rather, the defendant-official must demonstrate a reckless disregard toward the prisoner's serious medical need through "inaction or woefully inadequate action." Reed v. McBride, 178 F.3d 849, 854 (7th Cir. 1999).

In the instant case, plaintiff points to several factors from which a reasonable jury could find that Dr. Smulkstys was deliberately indifferent. Plaintiff argues that Dr. Smulkstys knew of plaintiff's need for surgery, but "turned a blind eye to plaintiff's medical needs and continued to simply send plaintiff back out for referral when it was clear no treatment was being provided." Plaintiff contends that Dr. Smulkstys merely repeated the same referral process to Fantus Clinic that he knew to be ineffective, resulting in plaintiff never receiving the surgery that Dr. Smulkstys agreed plaintiff required. The potentially serious complications from a fractured eye orbit include an infection that could spread to the brain, dizziness, double vision, nausea, headache, and pain. Although plaintiff's injury eventually healed, Dr. Smulkstys could not have known during the six months before it healed that it would do so. Even after the injury healed,

6

although imperfectly, plaintiff continued to complain of complications and Dr. Smulkstys continued to refer plaintiff for the surgery that Dr. Smulkstys still believed plaintiff required. More than two years after the injury, plaintiff still complains of complications.

Plaintiff suggests that Dr. Smulkstys could have done more, including communicating directly with the surgeons at Fantus Clinic, and investigating why plaintiff was not initially scheduled for surgery until June 2001 and why multiple surgery dates were cancelled. Dr. Smulkstys, of course, could not perform the surgery himself, and plaintiff does not offer any evidence that Dr. Smulkstys exerted any control over the surgery schedule at Fantus Clinic or that he could refer plaintiff elsewhere for surgery. The record also demonstrates that Dr. Smulkstys took some steps to secure surgery for plaintiff, such as ordering additional tests, prescribing blood pressure medication, and arranging transportation to the Fantus Clinic.

Clearly, Dr. Smulkstys did not simply ignore plaintiff. Indeed, he saw plaintiff more than a dozen times over approximately one year, and treated him for multiple ailments. The Seventh Circuit has held, however, that a prisoner is not required to show that he was literally ignored by the prison staff to establish deliberate indifference. Sherrod v. Lingle, 223 F.3d 605, 611 (7th Cir. 2000)(reversing summary judgment for the defendant where the plaintiff was given an enema and pain medication, but not treated for appendicitis). In the instant case, although plaintiff was treated for other conditions, he never received the surgery that he required and which Dr. Smulkstys himself prescribed. As a result, plaintiff was subjected to a risk of serious complications, including infection, and continues to experience symptoms from his eye injury.

Plaintiff argues that he was "merely passed back and forth" between Dr. Smulkstys and Fantus Clinic. At the very least, Dr. Smulkstys's explanation that he did not contact the surgeons directly for fear of "irritating" them seems objectively unprofessional. A reasonable jury could conclude that Dr. Smulkstys's failure to take a different or more aggressive course of action to secure surgery for plaintiff amounted to deliberate indifference. See Spencer v. Sheehan, 158 F. Supp. 2d 837 (N.D.Ill. 2001) (delay in the plaintiff's treatment for a foot injury that was a result of referring doctor's inaction and failure to ensure the plaintiff received prompt attention for a specialist could demonstrate deliberate indifference). Dr. Smulkstys's ineffectiveness was particularly significant to plaintiff, who as a prisoner had no other conduit for medical care and no ability to seek treatment elsewhere. Taken together, evidence offered by plaintiff, albeit it a bit thin, demonstrates genuine issues of material facts as to whether defendant's failure as the referring doctor to secure surgery for plaintiff demonstrated deliberate indifference.

## CONCLUSION

For the reasons stated herein, Dr. Smulkstys's motion for summary judgment is denied. The matter is set for a status hearing on January 6, 2005, at 9:00 a.m.

**ENTER:** **December 16, 2004**

_____
**Robert W. Gettleman**
**United States District Judge**

8